UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,           CRIMINAL NO. 00-81013

              Plaintiff,           HON. GEORGE CARAM STEEH

-vs-

D-1 **ALI BOUMELHEM**,
    a/k/a Ali Melhem,

              Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

    Defendant illegally acquired and shipped firearms, ammunition, and weapons parts to Lebanon over a period of years. The materials in which he was trafficking were to be used, not for hunting or sporting purposes, but for armed conflict. Among the persons supplied by defendant were members of Hizbollah, a designated terrorist organization. The sentencing guidelines as applied to the counts of conviction do not adequately address the seriousness of defendant's arms trafficking. Consequently, the court should depart upward from the guideline range to impose an appropriate sentence.

    In Koon v. United States, 518 U.S. 81 (1996), the Supreme Court stated that the determination of whether and to what extent there should be a departure from the guidelines is a discretionary decision by the trial court. The Supreme Court adopted the following mode of analysis:

2/18/02

1)   What features of this case, potentially, take it outside the Guidelines' "heartland" and make of it a special, or unusual, case?

2)   Has the Commission forbidden departures based on those features?

3)   If not, has the Commission encouraged departures based on those features?

4)   If not, has the Commission discouraged departures based on those features?

Id. at 95.

The burden of imposing a fair and just sentence, including decisions regarding departures from the sentencing guideline range, is placed on the District Court, which is uniquely qualified to perform this task. Not only is the District Court well acquainted with the facts of the case and the background of the defendant, the District Court is in a good position to evaluate each case and each individual defendant who appears before the court for sentencing in light of the spectrum of cases and defendants convicted of the specific offenses which are governed by the same provisions of the sentencing guidelines. Thus, the sentencing court can fully appreciate the "heartland" of the applicable guidelines. As stated in Koon v. United States, supra at 82,

> A departure decision will in most cases be due **substantial deference** [by an appellate court], **for it embodies the sentencing court's traditional exercise of discretion.** To determine if a departure is appropriate, the district court must make a refined assessment of the many facts that bear on the outcome, informed by its vantage point and day-to-day sentencing experience. Whether a given factor is present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guidelines cases. District courts have an institutional advantage over appellate courts in making these sorts of determinations,

especially given that they see so many more Guidelines cases. **Such considerations require adoption of the abuse-of-discretion standard of review, not *de novo* review.**

(Citations omitted. Emphasis added.)

### Outside the "Heartland"

This case is not a typical felon in possession case. The "heartland" for crimes covered by U.S.S.G. § 2K2.1 does not include the supplying of weapons, munitions and parts to persons participating in armed conflict in another country, especially when the intended recipients are members of a designated terrorist organization. If the court does not depart from the guidelines, defendant will have the same sentencing range as another defendant who transports weapons for relatively more benign purposes.

### Departure Not Forbidden

There is no provision in the Sentencing Guidelines which forbids the consideration of these factors.

### Departure Encouraged

As recognized by U.S.S.G. § 3A1.4 any crime that supports terrorism is considered is an aggravated offense. Application Note 1 refers to the term, "Federal crime of terrorism" as defined in 18 U.S.C. § 2332b(g), which states in pertinent part, the crime

> "(A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and
>
> (B) is a violation of--

*   *   * 2339B (relating to providing material support to terrorist organizations).

Hizballah is a designated terrorist organization. 64 FR 55112.

To be sure, the court would be justified in applying 3A1.4 to significantly raise the guideline range for the defendant.[1] If so, the range would be 210-262 months. Although the government does not propose that 3A1.4 should be used to increase the range, that provision should be considered by the court as an unambiguous signal that a departure is encouraged whenever there is evidence that the crime was used in someway to further terrorist activity.

**Factual Basis That Defendant Was Facilitating Terrorism**

The government has requested an opportunity to present evidence that the defendant's trafficking in arms and other materials facilitated Hizbollah. The evidence will come from a number of sources:

- ◆ The nature of the materials that were intercepted by the agents.
- ◆ A videotape of the defendant displaying weapons and ordnance.
- ◆ Historical witnesses who had first hand knowledge of defendant's shipments and affiliations in Lebanon.

To establish a factual basis, the government is required to prove enhancement factors by a preponderance of evidence. United States v. Little, 61 F.3d 450, 453 (6th Cir. 1995).

---

[1] 3A1.4 may be used even in those cases when a defendant is not convicted of an offense listed in 18 U.S.C. § 2332b. United States v. Graham, 275 F.3d 490 (6th Cir. 2001).

The F.B.I. has received a videotape taken of the defendant in Lebanon.[2] Defendant is seen with a number of weapons and other ordnance. The video depicts defendant in possession of an AK-47, an M-16, and handgun, and a rocket. At one point defendant and others men went into the mountains where they are seen firing weapons.

One of the persons depicted in the videotape is defendant's brother-in-law, who lived upstairs in the flat in which defendant occupied the downstairs. As they walked out of the house to the truck that would take them to the mountains where the weapons were fired, the following dialogue took place between the brother-in-law and the informant, with defendant within hearing distance.

**Informant:** **Where are we going to train today? Are you with Hizeb [Hizballah] or with Harakeh [Amal] or with me?**

**Brother-in-law:** **With both or them**

This search of the container by the Customs agents and the search of defendant's suitcase should be considered in the context of this videotape. Besides the two shotguns agents discover the following items in the container:

    600 rounds of 9 millimeter ammunition
    146 rounds of 7.65 millimeter ammunition
    Upper receiver for an AR-15
        (This is the same weapon as a military M-16, which is seen on the
        videotape)
    Hand grips for AR-15

---

[2]The videotape was given to the F.B.I. by an informant, whose credibility is suspect because, after the indictment of defendant and his brother, Mohamed, we learned that the informant had persuaded another person to falsely accuse defendant's brother of threats.

      Five flash suppressors for AK-47s
          (Fully automatic AK-47s are seen on the videotapes)
      Speed loaders
      Motorola hand held radio
      Scanner

At the time of his arrest at Detroit Metro Airport, where defendant was about to board a flight back to Lebanon, he had in his possession a suitcase which contained the following:

      Several knives
      Handgrips for AR-15
      Apparatus for mounting scope on AR-15
      Military clothing

There was other evidence that defendant made efforts to acquire military equipment while in the United States. He purchased two grenade launchers and mounts so that they could be attached to AK-47s or SKSs, both assault weapons. It may be argued that these launchers were designed to fire only flares. Whether or not they could fire only flares does not impact on the significance of those launchers. The use of illumination flares is an important tactical tool in armed conflict.

In addition to type of military ordnance purchased and/or shipped by defendant, the fact that he was providing material support to Hizballah is corroborated by testimony and statements of witnesses who had knowledge of defendant's activities. Youssef Nasser was one of those person. He has heard defendant and his brothers make statements about their affiliations in Lebanon. He has heard them brag about being members of Hizballah. They have also bragged about conducting tactical operations against the Israeli backed South Lebanese Army, the Israelis and the

Palestinians. Youssef Nasser has seen weapons, including AK-47s at Trumbull Auto Parts.

Robert Wiggins, currently incarcerated by the Michigan Department of Corrections on a murder conviction, formerly worked for the Boumelhems. He was interviewed by S/A Michael Thomas and S/A Cheryl Crockett on 2/6/01. Wiggins recalled an incident that occurred in 1994 or 1995. Ali Boumelhem had come from Lebanon and had purchased a van to be shipped back to Lebanon. Before the van was shipped, Ali Boumelhem showed Wiggins the interior of the van. Wiggins saw that it had been loaded with cases of ammunition (AK-47 and .38 caliber), several bullet proof vests, and several pairs of night vision goggles. Defendant told Wiggins that he was going to send the van with its contents to Lebanon the following day. Defendant further said that the items were needed in Lebanon to help the people who were fighting to get the Israelis out of southern Lebanon. Defendant explained that it was difficult to get those items, especially the ammunition, in Lebanon. The following day the van and its contents were dropped off at a shipping company.

Wiggins also told the agents that he had heard Ali Boumelhem and his brothers brag about their exploits in some type of militia in Lebanon. Defendant and his brothers admitted that they had been involved in killing Israelis in southern Lebanon. They also showed Wiggins a videotape, which appeared to be amateur quality. This videotape depicted dead people, blown up buildings, people holding weapons (including grenade launchers), and other combat scenes.

Information supplied by these two unconnected sources: Wiggins and Nasser; the nature of the ordnance intercepted; and the videotape are compelling evidence that defendant was trafficking in arms and supplies to aid the terrorist activities of Hizbollah. He should be sentenced accordingly.

**Defendant Not Entitled to Sentence Credit for Home Confinement**

Defendant contends that he should receive credit on his sentence for that period of time when he was released on pretrial bond with conditions that restricted him to his residence and place of employment. Defendant's argument is defeated by <u>Reno v. Koray</u>, 515 U.S. 50 (1995) in which the Supreme Court held that credit for time already served on a sentence only applies to that period of time in which a defendant is actually incarcerated. It does not apply to release on bail with restrictive conditions, such as home confinement.[3]

**Defendant Not Entitled to Decrease In Offense Level for Acceptance of Responsibility**

Defendant's attempt to gain an offense level increase for acceptance of responsibility must fail because there is no factual basis for such a position. The government did make a plea offer to defendant, which was not conditioned on the actions of defendant's co-defendant, Mike Boumelhem, his brother. That proposal was rejected by defense counsel because they would not agree to the sentencing range that was part of the proposed agreement.

---

[3]In fact, defendant may not even raise this issue at sentencing because the Bureau of Prisons, not the District Court has jurisdiction to decide whether or not to award credit. <u>United States v. Jenkins</u>, 38 F.3d 1143 (10th Cir. 1994).

> The burden is on the defendant "to show by a preponderance of the evidence that [he] had accepted responsibility for the crime committed." United States v. Thomas, 74 F.3d 701, 716 (6th Cir.), cert. denied, 519 U.S. 820 (1996). Although the guidelines permit a defendant to receive credit under § 3E1.1(a) even if he goes to trial, the reduction is "not intended for a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." Comment n. 2 to § 3E1.1. **It is only in "rare" situations that a defendant may receive the adjustment after trial and a guilty verdict;** e.g., "where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt". Id.

United States v. Hill, 167 F.3d 1055, 1071 (6th Cir. 1999). (Emphasis added).

If, in fact, defendant wanted to accept responsibility, he could have offered a guilty plea at any time without any plea agreement. He chose not to do so. Instead, he went to trial and contested his guilt, even to the extent of advancing a spurious defense by presenting the testimony of his father and brother. In this case, defendant has not met his burden to warrant a finding that he has accepted responsibility.

        Respectfully submitted,

        JEFFREY COLLINS
        United States Attorney

        */s/ Robert Cares*

        ROBERT P. CARES (P28888)
        Assistant United States Attorney
        Special Prosecutions Unit
        211 W. Fort
        Detroit, MI 48226
        (313) 226-9736

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

         Plaintiff,

vs.

D-1   ALI BOUMELHEM,
       a/k/a Ali Melhem,

         Defendant.
_____/

Case No. 00-81013

HON. GEORGE CARAM STEEH

## CERTIFICATE OF SERVICE

It is hereby certified that service of *Government's Sentencing Memorandum* has this February 19, 2002, been made upon counsel for defendant by placing same in a stamped envelope and depositing said envelope in the United States mail addressed as follows:

Edward A. Khoury, Esq.
220 Park Ave.
Birmingham, MI 48009

Lisa Mundy
United States Attorney's Office